IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| | Criminal No. 25cr092 (CKK) |
| v. | |
| | VIOLATIONS: |
| THOMAS G. EHR, | |
| | 18 U.S.C. § 371 (Conspiracy to Defraud the United States) |
| Defendant. | 26 U.S.C. § 7203 (Willful Failure to File) |

**STATEMENT OF OFFENSE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, THOMAS G. EHR ("EHR"), agree and stipulate to the facts presented below. These facts are presented for the purpose of demonstrating there is a factual basis for EHR's guilty plea pursuant to Federal Rule of Criminal Procedure 11, and do not represent all of the evidence that could have been presented at a trial. At all times relevant to this Statement of Offense:

**A.    Background**

1.   At all relevant times, THOMAS G. EHR, the defendant, was a United States citizen who lived outside the United States. He lived intermittently in Serbia, United Kingdom, China, and Spain. Starting in or about 2009, and continuing until approximately 2022, EHR worked for or on behalf of Douglas Edelman ("Edelman"), an American living outside the United States.

2.   Between 2003 and 2020, Edelman was the 50% owner of Mina Corp., and Red Star Enterprises Ltd. (collectively, "Mina/Red Star"), a defense contracting business

1

that received more than $7 billion from contracts with the U.S. Department of Defense to provide jet fuel to U.S. troops in Afghanistan and the Middle East. Edelman founded Mina/Red Star with Individual A, a Kyrgyz businessman.

3. Edelman used his profits from Mina/Red Star to fund other business ventures around the world, including a Mexican fuel infrastructure project, a music television franchise in Eastern Europe, and a real estate project in Tulum, Mexico.

4. In approximately 2009, Edelman hired EHR to be the general manager of the music television business and some related entertainment projects. In this role, EHR oversaw several staff, managed contracts, and carried out Edelman's orders. When the entertainment business needed money, Edelman decided whether to send additional money, and how much to send. Edelman ultimately invested more than $39 million into the music television franchise and related entertainment projects. The music franchise and entertainment projects were not sound investments and resulted in significant losses.

5. In approximately 2010, EHR connected Edelman to Mexican businessmen seeking investors for a real estate investment in Tulum, Mexico. Edelman subsequently invested more than $60 million into the real estate project. Although the sale of one parcel of land returned a small profit, the project never developed and title to many of the properties is currently disputed.

6. At some point near the end of 2010 or later, EHR became aware that over the course of 2010 a Subcommittee of the U.S. Congress investigated Mina/Red Star and questioned the business's ownership. After the investigation concluded, EHR learned that Edelman had caused the Congressional investigators to be told that it was Edelman's wife Delphine Le Dain, a French citizen, who had founded Mina/Red Star with Individual A.

EHR understood that Edelman founded Mina/Red Star, had been the 50% owner since the business's creation, and controlled hundreds of millions of dollars in profits from Mina/Red Star that he invested in businesses around the world.

7. Over the course of the next few years, EHR began to take a larger role in managing Edelman's businesses and financial affairs. At Edelman's request, EHR worked on a Mexican fuel infrastructure project involving some of the same Mexican businessmen involved in the real estate project. EHR observed that when the Mexican fuel infrastructure project needed money, Edelman decided whether to send additional money, and how much to send. Over time, Edelman directed more than $50 million into the Mexican fuel infrastructure project.

8. In 2015, Edelman engaged U.S. attorneys and tax preparers to prepare and file U.S. income tax returns for certain years. In June 2016, EHR witnessed Le Dain's signature on a "deed of gift" for $4 million, purporting to be a gift from Le Dain to Edelman for payment of Edelman's U.S. tax liabilities. At the time, EHR knew that Edelman controlled the funds in the bank accounts around the world that had been funded with profits from Edelman's 50% interest in Mina/Red Star, and that the notion of a $4 million "gift" was merely a way to corroborate the false story that Le Dain was the owner of the business interests and the wealth.

9. In 2016, Edelman authorized a payment to EHR, by way of a purported loan to EHR's wife, of more than $655,000 for the purchase of a house in Spain. Loan papers for the transaction required the loan to be repayable in full by 31 March 2018, with 2.5% interest after that date if the amount had not been repaid. EHR signed the papers as a guarantor. The funds came from one of Edelman's nominee entities.

10. In 2021, EHR and his wife sold the house they had purchased with Edelman's help. EHR and his wife did not use any of the proceeds of the sale to pay Edelman back. No payments—of interest or principal—were ever made on the loan. EHR used the proceeds from the sale of the house on personal expenses for his family. In 2023, EHR sought equity in one of Edelman's businesses or investments, which Edelman had promised him. In negotiation for equity, EHR proposed to repay the loan out of proceeds from the equity. When negotiations failed, EHR did not make any payments on the loan, and stopped intending to repay the amount. While initially and for several years EHR believed the loan remained repayable, he now acknowledges that the lack of demand for repayment, his lack of any payment, and his lack of intent to actually repay it resulted in the "loan" amount becoming income to him in 2023.

11. In late 2019 and early 2020, Mina/Red Star's banks expressed concerns about the complexity of Mina/Red Star's ownership structure. Individual A urged Edelman to become transparent as Mina/Red Star's 50% beneficial owner and said that he intended to report that fact to banks and relevant authorities going forward. As part of the efforts to find a new bank for Mina/Red Star, EHR helped draft an email to a financial institution denying that Edelman had any ownership interest in the business. EHR also drafted written responses to Individual A's emails and otherwise helped Edelman negotiate with Individual A to avoid Edelman being disclosed as the 50% owner of Mina/Red Star.

12. At some point in spring 2020, Edelman and his associates realized that a public registration database in Gibraltar—which could be viewed via internet search—listed Edelman as the 50% owner of Mina Corp. and Red Star Enterprises Ltd., the entities Edelman had formed in 2004 at the start of the defense contracting business. In June 2020,

at Edelman's instruction, EHR contacted a Gibraltar corporate services business to ask that the public registration information be changed to reflect, falsely, that the 50% owner of the companies was Le Dain.

13. In October 2020, EHR helped draft a response to a financial institution inquiring about the ownership of Mina/Red Star. The response asserted, falsely, that Edelman never had any ownership interest in Mina/Red Star.

14. Between 2009 and 2022, EHR worked for several different businesses and investments that he understood were owned by Edelman. In all of his projects, EHR reported directly to Edelman.

15. EHR knew that Edelman did not want to be known as the owner of the businesses and the wealth. EHR agreed to help Edelman conceal his identity as the owner of the businesses and the wealth. As a result of the scheme to conceal Edelman's identity as the 50% owner of Mina/Red Star, between 2003 and 2020, Edelman evaded taxes on more than $350 million of income he made from Mina/Red Star and other businesses funded with Mina/Red Star profits.

16. EHR earned several hundred thousand dollars per year in salary, compensation, and bonuses working for Edelman. EHR knew he had an obligation to file U.S. income tax returns and pay any taxes owed for each year. EHR did not timely file tax returns for years 2010 to 2020.

17. After learning of the Department of Justice's investigation into Edelman's and his associates, in approximately 2022, EHR late-filed federal income tax returns for 2016 to 2021, reporting an approximation of the income he received in each of those years

working for Edelman. EHR never filed tax returns for 2010 to 2015, nor did he file for the 2022 or 2023 tax years, and has not paid any of the taxes he owes for any year.

**B.     Offense Conduct—Count 1 (Conspiracy to Defraud the United States)**

18.    EHR knowingly, voluntarily, and intentionally agreed with Edelman and others to defraud the United States of America by concealing Edelman's ownership and control of Mina/Red Star and other businesses funded with Mina/Red Star profits, in order to obstruct the Internal Revenue Service from assessing and collecting Edelman's federal income taxes—including taxes Edelman owed on profits he made from contracts with the United States Department of Defense. Through various means, EHR and others took steps to conceal Edelman's identity as the owner of entities, bank accounts, and interests in businesses. Specifically:

   a. In June 2016, EHR witnessed Le Dain's signature on a "deed of gift" for $4 million, falsely purporting to be a gift from Le Dain to Edelman for the payment of Edelman's U.S. tax liabilities, when EHR knew that Edelman controlled the flow of funds and did not need a "gift" to make any payments;

   b. In June 2020, EHR contacted a Gibraltar corporate services business to ask that the public registration information for Mina Corp. and Red Star Enterprises Ltd. be changed to reflect, falsely, that the 50% owner of the companies was Le Dain, not Edelman, when EHR knew that Edelman had been the owner of the companies from the beginning but that Edelman wanted the record changed in order to conceal the truth;

c. In October 2020, after a financial institution inquired about the ownership of Mina/Red Star, EHR helped draft a response asserting, falsely, that Edelman never had any ownership interest in Mina/Red Star.

19. EHR agrees that as a result of this scheme, between 2003 and 2020, Edelman evaded taxes on more than $350 million of income he made from Mina/Red Star and other businesses funded with Mina/Red Star profits and caused a loss to the U.S. Treasury of approximately $128 million.

C. **Offense Conduct—Count 2 (Willful Failure to File Returns and Pay Taxes)**

20. EHR knew he had an obligation to file individual income tax returns reporting his income each year and paying any resulting taxes.

21. Despite making hundreds of thousands of dollars in compensation per year working for Edelman in each of the tax years 2010 through 2023, EHR willfully failed to file timely federal income tax returns or pay any individual income taxes.

22. EHR never filed individual income tax returns for years 2010 to 2015, nor for 2022, and did not make any payments on the taxes owed per the 2016 to 2021 tax returns he filed in 2022.

23. As a result of his failure to file and failure to pay, EHR agrees that he has yearly income and a tax due for years 2010 to 2023 as follows:

| Tax Year | Income | Tax Due and Owing |
|---|---|---|
| 2010 | $ 176,998.05 | $ 21,315.00 |
| 2011 | $ 252,823.09 | $ 45,558.00 |
| 2012 | $ 158,598.57 | $ 15,042.00 |
| 2013 | $ 185,630.83 | $ 25,047.00 |
| 2014 | $ 258,311.58 | $ 50,429.00 |

| 2015 | $ 248,788.62 | $ 38,147.00 |
|---|---|---|
| 2016 | $ 271,671.67 | $ 42,837.00 |
| 2017 | $ 272,554.32 | $ 42,965.00 |
| 2018 | $ 300,232.83 | $ 61,711.00 |
| 2019 | $ 344,148.06 | $ 70,043.00 |
| 2020 | $ 275,391.59 | $ 44,557.00 |
| 2021 | $ 323,103.43 | $ 61,114.00 |
| 2022 | $ 180,990.39 | $ 11,902.00 |
| 2023 | $ 655,975.00 | $ 193,741.00 |
| **TOTAL** | **$ 3,905,217.74** | **$724,408.00** |

KAREN E. KELLY
Acting Deputy Assistant Attorney General

By: 

Sarah C. Ranney
NY Bar No. 5050919
Assistant Chief
Department of Justice Tax Division
150 M Street, N.E., Room 1.104
Washington, D.C. 20002
Sarah.C.Ranney@usdoj.gov

Nanette L. Davis
DC Bar No. 442136
Senior Litigation Counsel
Department of Justice Tax Division
150 M Street, N.E., Room 1.107
Washington, D.C. 20002
Nanette.L.Davis@usdoj.gov

Ezra Spiro
NY Bar No. 5291838
Department of Justice Tax Division
150 M Street, N.E., Room 1.108
Washington, D.C. 20002
Ezra.K.Spiro@usdoj.gov

EDWARD R. MARTIN, JR.
UNITED STATES ATTORNEY
DC Bar No. 481866

By:

Joshua A. Gold
TX Bar No. 24103101
Assistant United States Attorney
U.S. Attorney's Office
601 D Street N.W.

Washington, D.C. 20530
Joshua.Gold@usdoj.gov

**Defendant's Acceptance**

I have read this Statement of the Offense and carefully reviewed every part of it with my attorney. I am fully satisfied with the legal services provided by my attorney in connection with this Statement of the Offense and all matters relating to it. I fully understand this Statement of the Offense and voluntarily agree to it. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

_April 3 2025_
Date

_[signature]_
Defendant THOMAS G. EHR

**Defense Counsel's Acknowledgment**

I am Defendant THOMAS G. EHR's attorney. I have reviewed every part of this Statement of the Offense with him. It accurately and completely sets forth the Statement of the Offense agreed to by Defendant, the Department of Justice Tax Division, and the Office of the United States Attorney for the District of Columbia.

| | |
|---|---|
| 04/16/2025 | *Michelle Peterson* |
| Date | Michelle Peterson, Esq. |